JACOBSEN MANUFACTURING COMPANY, a Wisconsin corporation, Einar A. Jacobsen, and Victor E. Bunck, Plaintiffs,

v.

STERLING PRECISION CORPORATION, a Delaware corporation, Defendant.

No. 68–C–83.

United States District Court
E. D. Wisconsin.

April 10, 1968.

James L. Perkins, M. Finley Maxson and Peter O. Fetzer, Chicago, Ill., Reginald W. Nelson and Richard C. Ninneman, Milwaukee, Wis., for plaintiffs.

Stephen C. Shamberg and Charles E. Gerber, Chicago, Ill., John Collins, Milwaukee, Wis., for defendant.

## OPINION AND ORDER DENYING PRELIMINARY INJUNCTION

REYNOLDS, District Judge.

This is a private action for violation of the securities law. The plaintiffs seek a preliminary injunction to prevent the defendant from publishing its tender offer to purchase stock in Jacobsen Manufacturing Co., Inc. (hereafter referred to as "Jacobsen").

The complaint, alleging a violation of Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5, a regulation promulgated thereunder, was filed on March 27, 1968. The next day arguments were heard on the plaintiffs' motion for a temporary restraining order. On March 30, 1968, this court issued a temporary restraining order, set bond in the amount of $37,000, and ordered a hearing date on plaintiffs' motion for a preliminary injunction on April 5, 1968.

At the April 5 hearing, the plaintiffs asked leave to file an amended complaint and an amended motion for a preliminary injunction. The court allowed the filing of these documents and allowed the defendant's answer to stand as the answer to the amended complaint. The defendant admits jurisdiction and venue. The only evidence presented at this hearing was in the form of documentary material.

The following uncontroverted facts appear from the verified pleadings. The plaintiffs are Jacobsen Manufacturing Co., Inc., a Wisconsin corporation, and two of its stockholders. Jacobsen's total common stock issued and outstanding is 773,226 shares. Of these shares 241,796 shares (about 31 percent) are owned by Jacobsen's officers, directors, and their families. Jacobsen common stock is sold on the over-the-counter market.

The defendant, Sterling Precision Corporation (hereafter referred to as "Sterling"), is a Delaware corporation. About March 19, 1968, Sterling began to publish an offer to purchase 175,000 shares of Jacobsen's common stock at $40 (net) per share in various newspapers around the country. The tender offer carried an expiration date of April 3, 1968, but the offer could be extended by Sterling to a date not later than May 3, 1968.* The offer further provided that if 175,-000 shares of Jacobsen were tendered prior to the expiration date, Sterling would be required to purchase those shares. If less than 175,000 shares were tendered, Sterling could elect to purchase all, but not less than all, of the shares tendered. If more than 175,000 shares

---

\* The offer has been extended by agreement of the parties to April 10, 1968.

were tendered, Sterling would be bound to purchase at least 175,000 shares on a first-come first-served basis. The offer further provided that the tenders of stock would be irrevocable.

The basis for plaintiffs' lawsuit is that the defendant has failed to disclose information to prospective sellers of Jacobsen stock which Rule 10b–5 would require be disclosed. It is clear that the following information was not disclosed in the defendant's tender offer:

1. Whether Sterling owned any of Jacobsen common stock at the time it made its tender offer.

2. Whether or not Sterling has any plans with respect to gaining or exercising control of Jacobsen.

3. Whether or not Sterling intends to pay for the shares with borrowed funds.

4. Whether Sterling has any information regarding Jacobsen not available to the general public.

5. Whether Sterling has made or is obligated to make any payment to Laird, Incorporated, a brokerage firm, in connection with the tender offer, either in the nature of a finder's fee or otherwise.

6. A survey of the market prices of the Jacobsen stock for a period prior to the issuance of the tender offer.

7. The fact that the irrevocability of the tender of shares means that tendering stockholders would not be able to accept higher offers for their stock made subsequent to the tender but before the purchase of the shares.

Rule 10b–5 provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of a national securities exchange,

"(1) to employ any device, scheme or artifice to defraud,

"(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

At the hearing on this matter plaintiffs' counsel announced that he would in effect limit his case for a preliminary injunction to less than what he hoped to prove at the trial on the merits. (Transcript p. 35) This limitation operated in two major areas. First, the plaintiffs agree that at this time they cannot prove that the defendant possesses "inside" information which it was bound to disclose in its tender offer. Secondly, the only alleged nondisclosures plaintiffs rely upon in support of their motion for a preliminary injunction are the two found in subparagraphs "b" and "f" of paragraph 10 of the amended complaint. These subparagraphs charge that the defendant's tender offer is false, misleading, and fraudulent in that it fails to disclose:

"(b) The defendant's plans, intentions and motives with respect to acquiring or exercising control of Jacobsen Company and the operation and disposition of its business, the manner and extent to which the defendant proposes to exercise influence in the management on the Jacobsen Company, the nature and scope of the defendant's interest and the interest of its officer, J. Russell Duncan in the Jacobsen Company, the particular motives which the defendant deems to be constructive for the Jacobsen Company or its shareholders, what the defendant proposes to do for the good of the shareholders of Jacobsen Company, and how Jacobsen Company fits into defendant's pattern.

\* \* \* \* \* \*

"(f) Other prices at which stock of Jacobsen Company has been traded since November, 1967, including particularly the highest prices at which the stock was traded prior to March

20, 1968, which prices—36½ bid, 37½ asked—existed in January, 1968, and also the prices 37½ bid, 39 asked —at which the stock was trading at the time of the defendant's public announcement of March 29, 1968, (Exhibit C.)."

In support of their position, the plaintiffs introduced one exhibit at the hearing, a copy of a newspaper article which appeared in the Milwaukee Journal on March 20, 1968; further, counsel referred to Exhibits B and C attached to the amended complaint. Exhibit B is a copy of a newspaper article which appeared in the Milwaukee Sentinel on March 20, 1968. Exhibit C is an announcement by the defendant which was published in The Wall Street Journal on March 29, 1968. No testimony was offered at the hearing, although the principal officers of the parties were in the courtroom.

The plaintiffs argue that the tender offer provides that "Sterling has no present intention of purchasing more than 175,000 shares" (of Jacobsen stock) and that this statement amounts to a representation that the defendant's sole purpose for the tender offer is to invest in Jacobsen stock. Further, the plaintiffs contend that since the purpose for the purchase is "investment," there has been a representation that the defendant contemplates no changes in management, policy, or operations of Jacobsen. This "investment theory," plaintiff contends, is reinforced in the mind of the unsophisticated shareholder since the tender offer asks for only 175,000 shares or about 22 percent of the total stock issued and outstanding. It is argued that the unsophisticated shareholder will not realize that 22 percent of the total stock could amount to an effective veto and constitute a negative type of control. It is plaintiffs' position that the offer amounts to a representation that defendant desires only to be a silent investor in Jacobsen and that this representation is misleading and false since the chairman of the defendant's Board of Directors (J. Russell Duncan) publicly announced that Sterling expected to "exert some influ-

ence in the management of the company." The following statements appeared in the Milwaukee Sentinel on March 20, 1968:

"Asked whether Sterling hoped ultimately to acquire a controlling interest in Jacobsen, Duncan said Tuesday that he feels 'the tender offer speaks for itself.'

\* \* \* \* \* \*

"If his offer is accepted by shareholders, Duncan said he expected that Sterling Precision 'will exert some influence in the management of the company.'

\* \* \* \* \* \*

"Duncan said Tuesday his interest in Jacobsen could be traced back 29 years, to a period in which he lived in Milwaukee and commuted to work at the Peerless Machine Co. in Racine.

"'We like that area,' he said. 'I think we have already demonstrated that,' he said, in a reference to his acquisition of the controlling interest in Milwaukee Western bank.

"'(Jacobsen) is a good business, and we're builders. We can complement them,' he said. 'This is simply a case of two plus two equaling more than four.'

\* \* \* \* \* \*

"'Our motives are constructive,' he said. 'We feel we can do a lot of good for the stockholders. Jacobsen fits right into our pattern.'"

The following statements appeared in the March 20, 1968, issue of the Milwaukee Journal:

"J. Russell Duncan, a former Milwaukeean who is chairman and chief executive officer of Sterling Precision, said he wanted to 'rebuild' Jacobsen if his offer is successful.

\* \* \* \* \* \*

"'It fits in with our plans and all we want now is 175,000 shares of Jacobsen common," he said.

\* \* \* \* \* \*

"Duncan said Wednesday that Sterling Precision has been buying Jacobsen Manufacturing stock recently but

he declined to say how much has been purchased."

The plaintiffs have presented an interesting and novel argument in attempting to show the likelihood that a misrepresentation has been made by the defendant. This court does not agree with the plaintiffs' premise. This court fails to see how the statement in the tender offer that "Sterling has no present intention of purchasing more than 175,000 shares" amounts to a representation that defendant's purpose in purchasing the shares is to become but a "silent investor" in Jacobsen. This court believes that even the most naive shareholder is aware that anyone who purchases 175,-000 shares at a total price of about seven million dollars, amounting to 22 percent of the outstanding stock of a company, is going to be in a position to exercise some form of control and will do so if he believes that it is in his interest. The plaintiffs are aware of this. The president of Jacobsen and one of the plaintiffs here called the tender offer "a raid" in the Milwaukee Sentinel (Exhibit B). Any stockholder who reads the newspaper articles upon which the plaintiffs rely for the argument that the stockholders are being misled are going to realize that Sterling is not merely trying to quietly add some lawnmower stock to its portfolio. In any event, since this court cannot agree that the tender offer represents that Sterling is not interested in control of Jacobsen, the plaintiffs' premise for their argument fails. Of course, without the premise the argument falls.

The plaintiffs' other argument arises from the fact that Sterling published an announcement of the tender offer in which it called stockholder attention to the fact that Jacobsen stock was offered for sale to the public in November 1967 for $22.50 per share. Plaintiffs argue that since Sterling saw fit to announce one of the lower prices that Jacobsen stock has sold for in the past, it became incumbent upon Sterling to show at least some of the higher prices Jacobsen stock has commanded in the market. Once again this court is unable to agree with plaintiffs' argument. It seems very clear to this court that information about stock prices, past and present, is readily available to anyone who wants it. This court takes judicial notice of the fact that Jacobsen stock sold at a higher price than $22.50 per share at the time the tender offer was made. It is more likely that Sterling advertised the $22.50 price because it wished to show the stockholders that Jacobsen stock had sold at least that low at one time and could possibly sell that low again. Although this salesmanship technique might prompt a stockholder to investigate the reasons for the rise in price of Jacobsen stock, this court doubts that it would frighten anyone into an unconsidered decision to tender shares. It is interesting that plaintiffs have been unable to cite this court to any authority holding that an offeror must give the whole range of prices of a stock if it quotes one.

The weakness of plaintiffs' position in their motion for a preliminary injunction becomes plainly clear when one considers the law of tender offers as it presently appears to exist. The plaintiffs have admitted for purposes of their argument for a preliminary injunction that the defendant was an outsider. One of the earlier cases construing Rule 10b–5 noted:

" * * * The rule [10b–5] is clear. It is unlawful for an insider, such as a majority stockholder, to purchase the stock of minority stockholders without disclosing material facts affecting the value of the stock, known to the majority stockholder by virtue of his inside position but not known to the selling minority stockholders, which information would have affected the judgment of the sellers. The duty of disclosure stems from the necessity of preventing a corporate insider from utilizing his position to take unfair advantage of the uninformed minority stockholders. It is an attempt to provide some degree of equalization of bargaining position in order that the minority may exercise an informed judgment in any such transaction.

Some courts have called this a fiduciary duty while others state it is a duty imposed by the 'special circumstances.' One of the primary purposes of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., was to outlaw the use of inside information by corporate officers and principal stockholders for their own financial advantage to the detriment of uninformed public security holders. * * " Speed v. Transamerica Corp., 99 F. Supp. 808, 828–829 (D.Del.1951).

Mills v. Sarjem Corporation, 133 F. Supp. 753 (D.N.J.1955), presented a situation where the offeror intended to acquire control of a corporation at a price below what it could get for the assets of the firm. After all of the stock was acquired by the offeror, it sold the acquired corporation's assets at a profit. The court held that the offeror was an outsider and had no duty to the tendering shareholders to disclose his profit-motivated plans.

■ It appears that the plaintiffs have attempted in their argument for a preliminary injunction to formfit their case to the situation found in Moore, Joyce, The Glidden Co. v. Greatamerica Corp., 167 CCH Fed.Sec.Rep. paragraph 91,953 (1967). In the *Moore* case the offerors had made a clear representation in their tender offer that "If such ownership is obtained, Greatamerica does not plan any changes in the management or business operations of The Glidden Company." Id. at 96,252. The offerors in *Moore* then impliedly represented to management that new management would be sought. The *Moore* case is, therefore, a clear case of inconsistent representations. The plaintiffs have not shown a clear initial representation in the tender offer, so subsequent statements made by officers of Sterling can hardly be called inconsistent.

■ The court's reasoning in this opinion should not be construed as a holding that "outsiders" never would have a duty to disclose imposed upon them by Rule 10b–5. Clear misleading statements need be shown, however, before this court can enjoin a tender offer. A recent authoritative and scholarly law review article observed that:

"Since our prototype case assumes that A is an 'outsider' to the corporation, the only basis under present law for imposing upon it an affirmative duty of disclosure in its soliciting literature would rest on the theory that the bare statements made are either misleading or that certain statements necessary to make the statements made not misleading have been omitted. In other words, if the courts require additional information to be included in tender offers, they must conclude that the minimal statements made imply to those reading them the existence or nonexistence of certain additional facts which must be accounted for by the offeror." Fleischer and Mundheim, Corporate Acquisition by Tender Offer, 115 Penn.L.Rev. 317 at 338 (1967).

In the instant case the plaintiffs have failed to show clear misleading representations in the tender offer or the absence of statements in the tender offer which in combination with other representations would lead to a conclusion that fraud was being perpetrated upon unsuspecting shareholders.

■ For these reasons this court is firmly convinced that plaintiffs have failed to meet their burden for an issuance of a preliminary injunction. A preliminary injunction is a powerful writ which should be issued only upon a clear showing of probable ultimate success. The plaintiffs choose to restrict their application for an injunction to narrower points than those alleged in their complaint. The plaintiffs have failed to clearly show a right to a preliminary injunction on the points presented.

For the reason that no award of a preliminary injunction can be made on the facts presented, it is unnecessary for this court to consider the question of irreparable injury. This court has restricted itself to a consideration of the plaintiffs' motion for a preliminary in-

junction at this time and, accordingly, no decision has been reached on the defendant's motion to dismiss.

Nothing herein shall be construed to express any prejudgment by this court of any of the ultimate issues of the case.

The foregoing opinion shall constitute the court's findings of fact and conclusions of law in accordance with Rule 52 (a) of the Federal Rules of Civil Procedure.

For the reasons stated above,

It is ordered that the temporary restraining order heretofore issued in this case be and the same hereby is quashed.

It is further ordered that plaintiffs' motion for a preliminary injunction be and it is hereby denied.