**601 WEST 26 CORP., Plaintiff,**

v.

**SOLITRON DEVICES, INC., Benjamin Friedman and Louis Sternbach & Company, Defendants.**

**No. 68 Civ. 3459.**

United States District Court
S. D. New York.

Oct. 10, 1968.

Miller & Summit, New York City, for plaintiff; Elliot Ira Miller, New York City, of counsel.

Windels, Merritt & Ingraham, New York City, for defendants Solitron Devices, Inc. and Benjamin Friedman; Francis E. Koch, New York City, of counsel.

Paul Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendant Louis Sternbach & Co.; Paul J. Newlon, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

Plaintiff, 601 West 26 Corp. ("plaintiff"), moves by way of an order to show

cause for a preliminary injunction pursuant to Fed.R.Civ.P. 65, prohibiting defendant Solitron Devices, Inc. ("Solitron"), and all persons acting on its behalf, from publicly issuing or disseminating any earnings and financial reports concerning Solitron until after a trial on the merits of the claims set forth in the complaint.

Plaintiff also seeks an order directing all defendants to submit to "immediate, full and complete discovery and inspection of all of their books, papers, records and working papers, together with oral depositions to be taken of the defendants * * *," the appointment of a special master to supervise the discovery and inspection process.

Plaintiff further demands a preference on the ready calendar for immediate trial.

The application for a preliminary injunction is denied for reasons detailed hereinafter. The application for a direction as to discovery and inspection and the appointment of a special master is granted to the extent indicated in this opinion. The application for a direction that, upon the completion of discovery and inspection, the cause be given a trial preference and be placed at the head of the ready calendar is hereby denied for the reasons expressed below.

Pursuant to Fed.R.Civ.P. 52(a), the Court's findings of fact and conclusions of law are set forth in this opinion.

Commencing in February, 1968, plaintiff wrote calls on 32,600 shares of Solitron stock at approximately $35.00 per share, for which it received a premium. Plaintiff thus obligated itself to sell to the purchaser a stated number of shares (usually in multiples of 100 shares) during the option period at the option price. Options covering 13,800 shares have been exercised; and plaintiff has borrowed the shares for delivery to these purchasers. Neither plaintiff nor its sole stockholder and president, Jacob Freidus, owns directly any shares of Solitron stock.

Plaintiff's complaint, filed August 28, 1968, charges manipulation and employment by Friedman of a scheme and artifice to maintain the price of Solitron stock at an artificially high price. Jurisdiction, however, is based only upon Section 27 of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78aa (1964).

Plaintiff alleges that defendant Louis Sternbach & Co., a firm of certified public accountants which certified in an unqualified opinion financial reports issued by Solitron during the period of the writing of the options and performed certain current accounting services for Solitron, had failed to follow generally accepted accounting procedures in their audit; failed to follow generally accepted accounting principles in the reporting of certain transactions and items; and permitted defendant Benjamin Friedman, president and largest stockholder of Solitron, to determine certain accounting reporting techniques. According to plaintiff, the resulting reports presented an unduly favorable earnings picture, as a consequence of which Solitron stock rose in price to the injury of plaintiff as a writer of call options.

The complaint further alleges that Friedman personally supervised Solitron's accounting practices, directed Sternbach in the preparation of the financial reports, and caused the financial reports to present inflated earnings in order to manipulate the price of Solitron's stock and maintain it at artificially high prices.

In addition, the complaint avers that all three defendants continue to present earnings reports not prepared in accordance with generally accepted accounting practices, in violation of Sections 9(a) (2), 10(b), 13(a), 18 and 20 of the 1934 Act, 15 U.S.C. §§ 78i(a) (2), 78j(b), 78m(a), 78r, 78t (1964), and the relevant Rules and Regulations of the Securities and Exchange Commission.

Plaintiff seeks, as permanent relief, a decree of this Court (1) appointing a

nationally recognized firm of certified public accountants to undertake an audit based on generally accepted accounting practices, under the continuing jurisdiction of this Court, at Solitron's expense, and (2) circularizing the results of the audit, upon completion, to the news and financial media.

Pending the trial, plaintiff seeks a preliminary injunction prohibiting defendants from disseminating earnings and financial reports concerning Solitron.

Solitron and Friedman, in their answer, deny substantially all of the allegations of the complaint, admitting, however, that Friedman has supervised the accounting practices for Solitron. They also defend on the ground that the complaint fails to state a claim upon which relief can be granted.

Sternbach's answer also denies substantially all of the allegations in the complaint, except that it admits that Sternbach did audit Solitron's financial statements of the past few years and supervised certain accounting services performed for Solitron. It defends on the grounds that the Court lacks jurisdiction of the subject matter of the suit; that the complaint fails to state a cause of action; and that plaintiff's claims are barred by the statute of limitations.

In addition, Friedman, on behalf of himself and all other stockholders of Solitron, sets up a counterclaim against plaintiff and Freidus, alleging that plaintiff, Freidus and others unknown employed schemes and artifices to defraud stockholders of Solitron and engaged in other practices in violation of, *inter alia*, SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 (a). Friedman alleges specifically that Freidus caused plaintiff to institute the main action in order to publicize false and fictitious statements regarding Solitron for the purpose of effectuating a decline in the market price of Solitron stock for plaintiff's and Freidus' own profit. Judgment in the amount of $15,000,000 is sought on the counterclaim.

Plaintiff and Freidus, replying to this counterclaim, deny substantially all the allegations and assert that the counterclaim fails to state a claim upon which relief can be granted.

Plaintiff's allegations assertedly are based upon the deposition of Edward Cole, a Sternbach partner in charge of the Solitron account; the deposition of Paul Windels, Jr., Secretary of Solitron; trial testimony of Friedman; and expert testimony of Norman Tucker, a partner of Arthur Anderson & Co., Certified Public Accountants,—all of which material is derived from litigation in the Northern District of Illinois, Amphenol Corp. v. Solitron Devices, Inc., (N.D.Ill. 68 Civ. 161), to which plaintiff was not a party.

In that action, a preliminary injunction was sought against a tender offer made by Solitron to shareholders of Amphenol. The plaintiff there contended that the registration statement filed by Solitron with the S.E.C. was false and misleading because of improper accounting practices and procedures. The District Court declined to issue the preliminary injunction (Opinion of Parsons, D. J., filed February 19, 1968) after hearings which lasted approximately ten days, and the Court of Appeals dismissed the appeal on May 2, 1968.

Plaintiff herein claims that the motion at bar does not involve a request for such radical relief as was sought in the *Amphenol* litigation, for the plaintiff there sought an injunction which allegedly would greatly interfere with the operation of a free securities market, while plaintiff herein seeks only to prevent pendente lite allegedly tainted figures from being disseminated, and the permanent relief seeks only an honest audit.

Defendants counter with the argument that the relief sought in this action is no less radical than that sought in the *Amphenol* case because plaintiff, in effect, seeks to bar disclosure of information—a result contrary to one of the chief aims of the 1934 Act.

## I

■ A preliminary injunction, being an extraordinary device, should be issued only reluctantly. The Court must be convinced that there is a probability of plaintiff's success upon a trial on the merits. E.g., Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840 (2d Cir. 1967); Nadya, Inc. v. Majestic Metal Specialties, 127 F.Supp. 467 (S.D. N.Y.1954). This Court, upon carefully reviewing the record, must conclude that plaintiff has not met its burden of showing probable ultimate success.

Plaintiff, in the main, relies on various papers and transcripts from the *Amphenol* proceeding as disclosing such facts that indicate plaintiff's probability of success in the action in chief. It submits that these depositions, affidavits and testimony clearly establish violations of the 1934 Act and pertinent Rules and Regulations. Defendants, however, in their answers, affidavits and memoranda deny certain of the factual allegations and contend that the inferences drawn by plaintiff from certain admitted statements and facts are erroneous. Defendants' position is that these acts did not give rise to any violation of the 1934 Act or Rules and Regulations. Moreover, defendant Sternbach contends that much of Cole's deposition is currently immaterial and cannot now be used to substantiate claims of impropriety on its part because of events which occurred subsequent to the date of the deposition.

■ The papers submitted to this Court by both parties are of substantial length (the Cole deposition alone runs to 249 pages) and the only conclusion which this Court can draw from the confused welter of testimony offered is that there are substantial, complicated, material questions of fact and law including inferences and interpretations, which are sharply disputed. Where this situation is present, the Court must deny the application for a preliminary injunction, even in cases arising under the Securities Acts. E.g., Willheim v. Investors Diver-

sified Services, Inc., 303 F.2d 276 (2d Cir. 1962); Vanguard Recording Society, Inc. v. Kweskin, 276 F.Supp. 563 (S.D.N.Y.1967); Blazon, Inc. v. DeLuxe Game Corp., 268 F.Supp. 416 (S.D.N.Y.1965). See also Jacobsen Manufacturing Co. v. Sterling Precision Corp., 282 F.Supp. 598 (E.D.Wis.1968).

■ There is another compelling reason for denying the application for a preliminary injunction in this case. While plaintiff alleges that jurisdiction exists under Section 27 of the 1934 Act, 15 U.S.C. § 78aa (1964), defendant Sternbach denies that the Court has jurisdiction over this cause; and, as appears from both defendants' memoranda, this issue is an important one which overhangs the entire action. Where the Court's jurisdiction is a substantial issue in controversy, a preliminary injunction should not issue. See A. H. Bull Steamship Co. v. National Marine Engineer's Beneficial Association, 250 F.2d 332, 337–338 (2d Cir. 1957); Garland v. Ruskin, 249 F.Supp. 977 (S.D.N.Y.1965).

Defendants apparently deny that plaintiff has standing to sue for violations of Sections 9(a) (2), 10(b), 18 of the 1934 Act, 15 U.S.C. §§ 78i(a) (2), 78j(b), 78r (1964) and thus, that this Court lacks jurisdiction over the action.

Section 9(a) (2) of the 1934 Act deals with the creating of actual or apparent active trading for the purpose of inducing the purchase or sale of securities. Section 10(b) deals with the employment of manipulative or deceptive devices in connection with the purchase or sale of securities. Section 18 creates liability for a false or misleading statement to a person who bought or sold a security at a price which was affected by such statement.

Defendants' contention is that, because plaintiff neither purchased nor sold a security nor was even a shareholder in Solitron, the operative language of these sections is not invoked. While plaintiff does cite authority that one need not be a purchaser or seller of a security to assert a cause of action under SEC

Rule 10b–5, it has not found any case which squarely permits a writer of call options to sue, nor has it found a case directly permitting a person in the closely analogous situation of a "short" seller to sue. Plaintiff's citation of M. L. Lee & Co. v. American Cardboard & Packaging Corp., 36 F.R.D. 27 (E.D.Pa.1964), is inapposite because there the alleged fraud was apparently perpetrated in connection with a contract to purchase and sell securities, though it was unclear whether the contract had in fact been executed. The Court held that an actual consummation of the purchase or sale was unnecessary in view of the fact that the 1934 Act defines purchase and sale to include a "contract to purchase" or "sell."*

The 1934 Act defines the term "sale" and "sell" to include "any contract to sell or otherwise dispose of." 15 U.S.C. § 78c(14). If a writer of a call option "otherwise disposes" of securities which he does not own, then apparently plaintiff has standing. However, if a writer of a call option does not "dispose" of a security because he does not own it, then, despite plaintiff's considerable pecuniary interest in Solitron, plaintiff may not seek relief from a violation of the Act.

■ This novel and important point of law was not adequately presented to this Court in a manner that would enable the Court to make an appropriate conclusion on the question of jurisdiction; and it would not be desirable to hear further argument on this question at this stage in the proceedings when the issue need not be finally determined. It is sufficient that the issue is reasonably doubtful to deny the application for a preliminary injunction.

■ One other factor, peculiar to this type of lawsuit, confirms the Court's decision to deny the application. While the Court is well aware that private parties have a law enforcement function under the Securities Acts, similar to that expressly given private litigants in antitrust cases by the antitrust laws, see, e. g., J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966), the interest of the public in "honest" disclosure is of major and primary concern to the Securities and Exchange Commission. Friedman, in his affidavit in support of the order to show cause and this motion, informs the Court that the S.E.C. and the American Stock Exchange have been fully advised of plaintiff's allegations and have been kept fully current as to recent developments. It has been held, properly so, that where the Commission is vested with primary responsibility for the protection of investors and, fully informed, has not taken action, the Court should weigh this factor in determining the application for a preliminary injunction. See Kauder v. United Board & Carton Corp., 199 F.Supp. 420 (S.D.N.Y.1961) (alleged violation of proxy rules).

The Court finds that all of these noted factors alone are sufficient to require denial of the application. The Court thus finds it unnecessary to inquire into the presence or absence of

---

* Nor do recent decisions of the Court of Appeals for this Circuit, broadly interpreting the operative language of Rule 10b–5(5), definitively support a holding that plaintiff, in fact, has standing. In Heit v. Weitzen, 402 F.2d 909 (2d Cir. Oct. 3, 1968), the court reversed the dismissal of complaints alleging violations of Rule 10b–5 in the dissemination of false and misleading financial statements. The court held that though the statements had not been disseminated for the purpose of affecting sales or purchases of securities, under the rationale of SEC v. Texas Gulf

Sulpher Co., 401 F.2d 833, at 860 (2d Cir. in banc Aug. 13, 1968), they, nevertheless, were devices employed "in connection with the purchase or sale" of securities since they were of a sort which "would cause reasonable investors to rely thereon." SEC v. Texas Gulf Sulpher Co., supra at 860. The plaintiffs in Heit v. Weitzen, however, were either shareholders or bondholders, and, thus, obviously were members of the class of "investors" that Rule 10b–5 was meant to protect.

irreparable harm to plaintiff or the question of injury to defendants.

The application for a preliminary injunction is hereby denied.

So ordered.

## II

The case in chief would seem to require a substantial amount of discovery and inspection, which, in light of the nature of the allegations in the complaint and counterclaim, is likely to be acrimonious and grudging. The Court, anticipating that numerous problems will arise in the course of discovery and inspection, grants plaintiff's motion with respect to discovery and inspection and the appointment of a special master as follows:

1. Within ten days after the date of the filing of this opinion, the plaintiff shall serve a written notice upon the attorneys for the respective defendants stating the names of the persons whose oral depositions are to be taken and the proposed time and place for the taking of such depositions, specifying the documentary materials of which plaintiff desires discovery and inspection and the time and place for the production or inspection thereof.

The Court hereby appoints and designates William G. Mulligan, Esq., 36 West 44th Street, New York, New York, a special master in the above-entitled action:

(a) to superintend the taking of depositions, interrogatories and all other discovery procedures by plaintiff and to preside at the taking with power:

(i) to rule upon the form of any question addressed to a witness;

(ii) to rule in the first instance on any objection to any question made by or on behalf of any party or a witness, and upon upholding any such objection to disallow the question;

(iii) to rule in the first instance that answers to any such questions objected to by any party may be taken subject to such objections being preserved until the admissibility of said testimony is determined by this Court upon the trial of this action;

(iv) to rule in the first instance upon any objection to any question made on the ground that the answer to such question might cause the disclosure of a confidential communication between attorney and client or matter otherwise protected from disclosure;

(v) to rule in the first instance upon all applications made during or in connection with the said depositions, interrogatories and all other discovery procedures under the Federal Rules of Civil Procedure;

(b) to superintend all proceedings of plaintiff for discovery under Rule 34 with power to determine the scope thereof, determine compliance with discovery directions by this Court, supervise the production of records in response to any directions by this Court in such manner as the special master considers will protect the rights of the parties and to rule in the first instance on the use at the depositions of any matter produced in such discovery under Rule 34; and

(c) to regulate, pursuant to Rule 53 (c), all proceedings in every hearing before him and to do all acts including setting dates for discovery, determining who shall be examined, in what order and in what capacity, and to take all measures necessary or proper for the efficient performance of his duties as set forth above.

2. Any question taken or ruling made by the special master shall be subject to review by this Court, upon the application of any party.

3. The special master shall enter upon his duties upon entry of this order and service of a copy thereof upon him.

4. The compensation to be allowed the special master for his services shall be fixed by this Court upon motion of the special master after the special master shall have fully rendered the services called for above. The compensation so allowed to the special master by this Court shall be taxable as costs.

So ordered.

## III

In view of the fact that the plaintiff has requested appointment of a special master and the Court has granted such request, it would seem that this case is not yet ripe for early trial and preference on the ready calendar. When pre-trial proceedings shall have been concluded, any party, if so advised, may make an appropriate motion for a preference, the merits as to which motion the Court expresses no opinion at this time.

Motion for a preference denied without prejudice to its renewal in accordance with the views expressed in this opinion.

So ordered.