**EASTIN–PHELAN CORPORATION,**
**Plaintiff,**

**v.**

**HAL ROACH STUDIOS, INC. and Feiner**
**& Company, Inc., Defendants.**

**No. 71 Civ. 4768.**

United States District Court,
S. D. New York.

July 19, 1972.

---

Shenier & O'Connor, New York City (Francis M. O'Connor, New York City, Schuyler, Birch, Swindler, McKie & Beckett, Washington, D. C., of counsel), for plaintiff.

Pryor, Braun, Cashman & Sherman, New York City (Sanford Goldman, New York City, of counsel), for defendant Hal Roach.

Hardee, Barovich, Konecky & Gaines, New York City, for defendant Richard Feiner & Co.

## MEMORANDUM

TENNEY, District Judge.

Plaintiff Eastin-Phelan Corporation moves pursuant to Fed.R.Civ.P. 65(a) for a preliminary injunction enjoining defendants Hal Roach Studios, Inc. ("Hal Roach") and Richard Feiner & Company ("Feiner") from interfering with plaintiff's sales of substandard dimension motion picture films of the subjects enumerated in a licensing agreement between Eastin-Phelan and Hal Roach dated February 16, 1968. Plaintiff is also seeking to enjoin the defendants from interfering with the exhibition of such films by certain nontheatrical organizations to which plaintiff might sell these films. Jurisdiction is founded on diversity of citizenship. 28 U.S.C. § 1332.

The licensing agreement in question granted plaintiff the exclusive right to "duplicate, print, re-record, release, sell, distribute and exploit such motion picture film subjects" owned by Hal Roach and listed in the agreement. The subjects included several Laurel and Hardy films. At issue in the motion for a preliminary injunction is the meaning to be given to paragraph 5 of the agreement which provides in part:

> "It is understood that the rights granted hereunder are limited to home and nontheatrical use. . . .

> " 'Nontheatrical' as used herein is defined as exhibitions on substandard dimension motion picture film only and outside of regularly established motion picture theatres, and *not in commercial competition therewith.* It is understood that showings in schools, churches, clubs, lodges, supermarkets, *night clubs, restaurants, taverns,* hospitals, homes, orphanages and such institutions as well as by industry *are considered noncompetitive* with established theatres." (Emphasis added.)

Subsequent to executing the licensing agreement, plaintiff commenced selling the films to Shakey's, Inc. and its franchisees for exhibition of the films throughout the country in restaurants known as Shakey's Pizza Parlors. Shakey's advertised the films and showed them to the general public without an admission charge as part of its effort to attract customers to its restaurants. By letter dated February 24, 1970 (Exh. 3 attached to affid. of Kent D. Eastin), Hal Roach informed plaintiff that

> " . . . it was never our intent, written or otherwise, to allow restaurants, taverns, et cetera to advertise and exploit the films bought from you in order to entice and invite . . . [customers] into these business establishments in commercial competition with theatres. This is not a home movies right, therefore we must ask that your boxes, invoices, et cetera clearly indicate that the films are to be used solely for home use and not for commercial exploitation and gain."

Hal Roach complained that the advertising and exhibitions of the films by Shakey's and similar establishments were in commercial competition with established motion picture theatres and

thus were outside the scope of the licensing agreement. In April 1970 representatives of plaintiff and defendant met to discuss the dispute over the meaning of paragraph 5 of the agreement, and Hal Roach indicated that it never intended to grant plaintiff the right to sell the films to restaurants, night clubs and taverns that would use the films in a manner so as to become competitive with established theatres, despite the language in the agreement that such places were not considered competitive. Rather defendant Hal Roach intended to limit plaintiff's rights to private exhibitions of the films. Thereafter in a letter dated May 19, 1970 (Exh. 4 attached to affid. of Kent D. Eastin) Hal Roach offered to amend paragraph 5 of the basic agreement so as to specifically provide that purchasers of the film such as eating establishments would not be permitted to use the films to induce customers to patronize the establishment and that efforts to do so would be considered to be in commercial competition with theatres. Eastin-Phelan refused to amend the agreement.

Thereafter Hal Roach by letter dated July 15, 1971 (Exh. 5 attached to affid. of Kent D. Eastin) informed Shakey's that

> "the Hal Roach Studios, Inc., retains all rights of public exhibition with respect to all of the copyrighted Laurel and Hardy films and we have assigned Richard Feiner and Company, Inc., the task of policing the exhibition by restaurants of these films as inducement to lure customers to these establishments. The unauthorized exhibition of these films by restaurants is a violation of our copyright ownership unless such restaurants enter into written agreements with the Hal Roach Studios, Inc. . . . . ."

Hal Roach then again advised Shakey's that its use of the films in a manner so as to induce customers to frequent its pizza parlors was in violation of the licensing agreement between Hal Roach and plaintiff (Exh. 5 attached to affid. of Kent D. Eastin). Three days later, on October 7, 1970 Shakey's informed plaintiff by letter (Exh. 9 attached to affid. of Kent D. Eastin) that it would *temporarily* cease showing the films until the dispute between plaintiff and Hal Roach was resolved.

On November 1, 1971, plaintiff filed the within action seeking a declaratory judgment that plaintiff owns the exclusive right to exploit substandard dimension films and videotapes of the motion picture subjects listed in the licensing agreement for home and nontheatrical use as defined in the agreement. In support of the present motion for a preliminary injunction plaintiff asserts that despite what it considers the clarity of the language in paragraph 5 of the agreement defendants have interfered with its sales of the film and with the exhibitions of the films; that such interference has caused and will continue to cause plaintiff irreparable harm; and that defendants will not be caused undue inconvenience or loss by the issuance of an injunction.

The question raised is whether exhibition by Shakey's is "nontheatrical" in nature, as the term is used in paragraph 5 of the licensing agreement. The problem arises out of the juxtaposition of the words emphasized in the quotation from paragraph 5, *supra*. They are: "outside of regularly established motion picture theatres, and not in commercial competition therewith" and "night clubs, restaurants and taverns."

Plaintiff defines "nontheatrical" as including exhibitions in restaurants and like nontheatrical organizations where the principal business is other than the exhibition of films and no charge is made for viewing films. Plaintiff takes the position that it can sell its films to any organization which is "normally" noncompetitive with theatres, even though that organization then exhibits the films in a competitive manner. Under this reading of paragraph 5 of the agreement, plaintiff would have the right to sell its films to Shakey's for exhibition to the general public because

Shakey's is primarily in the restaurant business.

Defendants, on the other hand, have submitted affidavits to the effect that "nontheatrical" is a term of art in the motion picture industry and is used to denominate exhibitions which are not competitive with theatre exhibitions. According to defendants, only two factors are considered in determining whether exhibitions are theatrical or nontheatrical: (a) whether the exhibition is to a public or private audience; (b) whether or not there has been general solicitation through public advertising. Hal Roach contends that the mere fact that a film is shown in a place other than a movie theatre and that no special admission is charged to see it does not make its exhibition nontheatrical. Under this reading of paragraph 5 of the agreement, the exhibitions by Shakey's would be theatrical in nature.

■ Turning then to the motion for preliminary injunction, it is clear that "[t]o warrant the extraordinary relief of a preliminary injunction, plaintiff must show, by the weight of the evidence, that there is a reasonable probability that it will succeed at the trial on the merits and that denial of the prayed for injunctive relief will result in irreparable and immediate injury to it." Oleg Cassini, Inc. v. Couture Coordinates, Inc., 297 F.Supp. 821, 827 (S.D.N.Y.1969).

Plaintiff in its memorandum of law does assert that as a result of the defendants' activities it will suffer financial loss and irreparable harm to its reputation and good will, unless the injunction is issued. Plaintiff, however, has not demonstrated this alleged harm to a degree sufficient to warrant an injunction. The Court is presented with two conclusory statements in the memorandum of law that as a result of Shakey's decision to cease exhibiting the films until the dispute over the meaning of the term "nontheatrical" is resolved, plaintiff is suffering irreparable harm. While Eastin-Phelan may incur monetary loss as a result of Shakey's action

since Shakey will not purchase more films, the loss is monetary, not irreparable and is probably only temporary if plaintiff's interpretation of paragraph 5 of the agreement is correct, since Shakey's has indicated a willingness to renew its exhibitions of the films if plaintiff ultimately wins this suit. Plaintiff has in no way attempted to demonstrate how Shakey's decision will cause irreparable harm to its reputation and good will.

Included among plaintiff's papers in support of its motion for an injunction are two letters (Exhibits 6 & 7 attached to affid. of Kent D. Eastin) from distributors of Eastin-Phelan to it stating that both the distributors and plaintiff stand to suffer *financial* loss if Shakey's is forced to seek permission from Hal Roach before exhibiting the films. The only reference to potential harm to plaintiff's reputation and good will is this passage in one letter (Exh. 7 attached to affid. of Kent D. Eastin):

> "Eastin-Phelan Corporation is the copyright proprietor of these films for non-theatrical use according to your advertising. If such is not the case, your company has created a jeopardous legal situation for its own clientele and a legal situation for itself.
>
> "The Shakey's letter attached indirectly impugns your integrity as well as my own."

A copy of the letter from Shakey's, however, has not been included among plaintiff's papers and the Court is left to speculate on the seriousness of the alleged injury to plaintiff's reputation. Moreover, since the parties agree that plaintiff does in fact own the "nontheatrical" use of the films, its advertising to that effect is correct. The only question is whether Shakey's exhibition of the films can be considered "nontheatrical", a matter about which reasonable men can and obviously do differ and which does not, without more, appear to attack the integrity of plaintiff's advertising. Accordingly, plaintiff has not satisfactorily demonstrated that it will

incur irreparable harm if the requested injunction is denied.

██ Eastin-Phelan has also failed to demonstrate that there is a reasonable certainty of its success on the merits. While plaintiff argues that the language of paragraph 5 ,is clear and provides Shakey's can exhibit the films within the meaning of the agreement, defendants vigorously contest plaintiff's construction of the agreement and rely on the premises that the language must be most strictly construed against the one who wrote it (Eastin-Phelan), the contract must be viewed as a whole and it is the intention of the parties that governs. And defendants argue that their intention was to limit plaintiff's rights to private showings of the films. Finally, defendants have submitted affidavits testifying that "nontheatrical" is a term of art which means that the owner of the "nontheatrical" rights to a film has only the right to exhibit the films to private audiences. In any event, there is clearly a factual dispute over the language in paragraph 5, as evidenced by the denial of summary judgment in this case. Eastin-Phelan, Inc. v. Hal Roach Studios, Inc., 71 Civil 4768 (S.D.N.Y. June 26, 1972) (Metzner, J.). Where doubtful issues of fact exist which may determine the result, a preliminary injunction is not in order. Cement Enamel Development, Inc. v. Cement Enamel of New York, Inc., 186 F.Supp. 803, 804 (S.D. N.Y.1960); American Radiator & Standard Sanitary Corp. v. Sunbeam Corp., 125 F.Supp. 839, 841 (S.D.N.Y.1954). Because of the ambiguity and conflicting nature of the language in paragraph 5, which is susceptible of more than one meaning, and since the circumstances surrounding the preparation of the agreement will have a bearing on the final outcome of this suit, the issues of fact in this case should not be decided on the basis of affidavits alone and should be determined at trial. 601 West 26 Corp. v. Solitron Devices, Inc., 291 F.Supp. 882, 885 (S.D.N.Y.1968), aff'd, 420 F.2d 293 (2d Cir. 1969). The presence of these fact issues alone preclude a finding that there is a reasonable cer-

tainty of plaintiff's ultimate success on the merits.

Accordingly, and for the foregoing reasons, and in the exercise of my discretion plaintiff's motion for a preliminary injunction is hereby denied.

So ordered.