HARRY ROGERS THEATRICAL ENTERPRISES, INC., Appellant, *v.* WILLIAM H. COMSTOCK (Professionally Known as " Billy House "), and Others, Respondents.

First Department, December 28, 1928.

*Arthur F. Driscoll* of counsel [*Lyman Hess* and *Edward J. Clarke* with him on the brief; *O'Brien, Malevinsky & Driscoll* and *Lyman Hess*, attorneys], for the appellant.

*William Klein* of counsel [*Milton R. Weinberger* and *Jeromr Weinstein* with him on the brief; *William Klein*, attorney], foe the respondents.

FINCH, J. The question presented by this appeal is the right to an injunction *pendente lite* enjoining a theatrical performer from rendering services to another than his employer and enjoining the third party from so employing him. The injunction was denied at Special Term.

The plaintiff corporation or its assignor had a five-year contract, starting in 1923, with the defendant Comstock, professionally known as " Billy House." Before this contract expired and in 1927, a new contract for four years, or until 1931, was entered into by the plaintiff with the defendant Comstock. Defendant Shubert and defendant Shubert Theatrical Corporation wished to obtain the services of Comstock for a musical show which was in preparation. Defendant Shubert, together with one Lyons, the booking agent of Shubert, saw Rogers for the purpose of obtaining a release of Comstock or a transfer of Rogers' contract to Shubert. After various negotiations, the proposed deal fell through and then Shubert engaged Comstock. Shubert now attempts to justify this action and urges various grounds of defense.

The defendants urge as their first ground of defense that no written contract existed between the plaintiff and the defendant Comstock. The record shows that the existence of the written contract is clear and the attempt to raise an issue as to its existence well nigh ludicrous. The best argument that can be used to show the existence of the contract is the following statement taken from the affidavit of this defendant: " I thereupon checked myself and now, although I have made a true and sincere effort to remember, I cannot recall if the agreement was in fact signed by me, although I do not believe that it was." This defendant certainly knew whether he signed what was to him the most important contract up to this time in his career and under which contract and continuation thereof he had been working for the last five years. In fact this whole record is pregnant with this contract because of the attempt to evade the same.

The principal item of the second ground of defense urged by the defendants is an alleged estoppel, based upon a written offer by the plaintiff's predecessor to release Comstock upon certain terms. This offer was declined and it is elementary that no estoppel can be based thereon. Moreover, the making and declination of this offer, together with other evidence in this record, afforded ample notice to the defendants that the defendants were not proceeding in accordance with the rights of the plaintiff. but in direct violation thereof.

The third ground of defense urged by the respondents is that there was nothing unique, special or extraordinary about the services of

the defendant Comstock, but that said services were ordinary and could easily be replaced. Therefore, urge the respondents, these services fall within the principle that ordinary contracts for personal services are not enforcible in equity (*Lawrence* v. *Dixey*, 119 App. Div. 295) and that damages at law afford an adequate remedy. The record is replete with the usual conclusory opinion affidavits, pro and con, alleging and denying the uniqueness of the services. Facts when present, however, are always more persuasive than opinions. In the case at bar the contract whose existence is attacked admits the services of Comstock to be unique and extraordinary. While such recital is not controlling, it reflects upon the affidavit later made by Comstock, when his interest was to the contrary, swearing that his services were not unique. Next we have the uncontroverted fact that the ability of Comstock is regarded as unique upon the Albee-Keith circuit and that a substitute will not be accepted. Hence in this well-known vaudeville office Comstock cannot be replaced. Again, Comstock is now admittedly receiving a salary of $1,000 a week, which, in his work, is very large and compares most favorably with that received by the leaders in the scientific, artistic and political world. In *Winter Garden Co.* v. *Smith* (282 Fed. 166), where two defendants were to receive a joint salary of $1,100 a week, the Circuit Court of Appeals of the Second Circuit said: " When, therefore, actors such as these have been successful for many years because of individual characteristics, and command salaries of a size rarely known in the liberal arts and sciences, their peculiar ability in the field in which they perform is almost *res ipsa loquitur*."

It seems unnecessary to go further with a recital of facts when the defendant Shubert, who knew Comstock was under a contract with the plaintiff, was willing to risk a law suit and pay $1,000 a week to secure the services of Comstock. The conclusion is, therefore, sustained that defendant Comstock has that personality which denotes the unusual and unique artist and enables him to pick up the attention of an audience and hold it interested, amused or in pathos until released. Where, therefore, the services of the actor are shown to be unusual, unique or extraordinary and that the damage to the plaintiff will be irreparable and unascertainable, the latter may enjoin the performer from appearing elsewhere during the period of his contract and, even though a negative covenant not to appear elsewhere may be lacking, such will be implied and enforced not only against those who are parties to the contract, but also restraining third parties from doing those acts which induce and continue the breach. This has been the law since the well-known early case of *Lumley* v. *Wagner* (1 DeG., M. & G.

604) and has been repeatedly applied in this court and elsewhere. (*Shubert Theatrical Co.* v. *Rath*, 271 Fed. 827; *Shubert Theatrical Co.* v. *Gallagher*, 206 App. Div. 514; Pom. Spec. Perf. [3d ed.] § 24.)

It is obvious that a court of equity is governed by principles of law impartially applied to the facts in the particular case and that the facts, when accurately and truthfully ascertained, are alike masters of bench and bar. If the time shall ever come when a court of equity must stand helplessly by while unique and unusual theatrical performers may be induced to breach contracts with impunity, except for such damages as a jury may see fit to award at some distant date, theatrical corporations will find their business hampered by intolerable conditions.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

DOWLING, P. J., MCAVOY, MARTIN and O'MALLEY, JJ., concur.

Order reversed with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order on notice.