The complainant, a manufacturer of metal toys, engaged the services of the defendant Bueschel, an inventor, to invent and design toys and tools and dies to be used in the process of manufacturing toys, for three years from April 3d 1933, at a fixed weekly wage and a percentage of the profits on toys invented by him. Bueschel quit in April, 1934, and took employment in the same capacity with the defendants, Grauert and Lackawanna Manufacturing Company, metal toys manufacturers. Upon filing the bill a restraint issued against Bueschel's serving his new employers and the new employers from continuing Bueschel in their employ as inventor and designer of toys and tools and dies,c. The motion is to continue the restraint until the final hearing. *Page 338 
The services agreed to be rendered — inventing and designing — are obviously "special, unique or of an extraordinary character" and within the class where equity, while not specifically enforcing the contract, restrains the employe from serving a competitor of the employer during the term of the engagement. Bueschel does not deny the individuality of his skill; we are not concerned with the quality or grade of his inventive genius. He resists the injunction on the ground that the hiring was not exclusive and because he did not covenant not to invent and design for others. The contract of employment for three years, with his duties thus defined, "the duties of your employment shall consist of and require you inventing and designing toys for us and directing the production of toys by us," and "the duties of your employment shall be performed by you at our Hackettstown plant or other plants," precludes the idea that he could serve others, and impliedly covenants that during the period he would not give his talents to others.
The defendants rely on the expression of Mr. Justice Swayze inTaylor Iron and Steel Co. v. Nichols, 73 N.J. Eq. 684: "Where the contract relates to personal services of a special, unique or extraordinary character which can be performed by no one elseand there is a negative covenant, the court sometimes enforces the negative covenant by injunction, as in Lumley v. Wagner, 1DeG. M. G. 604." The language was used in argument, not in the decision; it has led counsel into error. Equity may restrain a breach of contract of the peculiar character here involved where there is no negative clause. In Montague v. Flockton, 16 L.R.Eq. C. 189, the court restrained an actor from performing at another house during the term of his engagement with the complainant at his theatre, and commenting upon Lumley v.Wagner, supra, said: "It happened that that contract did contain a negative stipulation and finding it there Lord St. Leonards relied upon it; but I am satisfied that, if it had not been there he would have come to the same conclusion, and granted the injunction, on the ground that Mademoiselle Wagner, having agreed to perform at Mr. Lumley's theatre, could *Page 339 
not at the same time be permitted to perform at Mr. Gye's. But however that may be, it is comparatively unimportant, because the subsequent authorities have completely settled this point." InCort v. Lassard, 18 Or. 221, the court said: "As a result of these English authorities, while conceding that specific performance of such contracts could not be enforced, the jurisdiction is established that relief may be granted on a contract for such services, even though it contains no negative clause, upon the ground that a contract to act or play at a particular place for a specified time necessarily implies a prohibition against performing at any other place during that period." In Harry Rogers Theatrical Enterprises, Inc., v.Comstock, 232 N.Y. Supp. 1, Mr. Justice Finch said: "Where, therefore, the services of the actor are shown to be unusual, unique, or extraordinary, and that the damage to the plaintiff will be irreparable and unascertainable, the latter may enjoin the performer from appearing elsewhere during the period of his contract, and, even though a negative covenant not to appear elsewhere may be lacking, such will be implied and enforced not only against those who are parties to the contract, but also restraining third parties from doing those acts which induce and continue the breach."
Bueschel claims that he left the employ with the complainant's consent. It is met with a denial. The burden of proof is on him and he has not met it.
Bueschel also justifies quitting because the complainant failed to pay him his percentage of profits on toys invented by him. He has not sustained it; he did not leave on that account.
The injunction will continue until final hearing. *Page 340