VANGUARD RECORDING SOCIETY,
INC., Plaintiff,

v.

Jim KWESKIN and Warner Bros.
Records, Inc., Defendants.

No. 67 Civ. 3133.

United States District Court
S. D. New York.

Oct. 26, 1967.

Paul J. Kern, Sanford R. Ross, New York City, for plaintiff.

Coudert Brothers, New York City, for defendant Warner Bros. Records, Inc., Carleton C. Eldridge, Jr., Eugene L. Girden, and Gordon T. King, New York City, of counsel.

Pryor, Braun, Cashman & Sherman, New York City, for defendant Jim Kweskin, Gideon Cashman, New York City, of counsel.

MEMORANDUM

BONSAL, District Judge.

Plaintiff, Vanguard Recording Society, Inc. (Vanguard), instituted this action in Supreme Court, New York County, based on a contract between it and the defendant Jim Kweskin (Kweskin) dated April 17, 1963. Thereafter, on August 17, 1967, defendants Warner Bros. Records, Inc. (Warner Bros.) and Kweskin removed the action to this court on the ground of diversity of citizenship.

Vanguard moves pursuant to Rule 65, F.R.Civ.P., for a preliminary injunction enjoining:

a) defendants Kweskin and Warner Bros. from performing any agreements between them for the recording and sale of phonograph records embodying the performances of Kweskin;

b) defendant Warner Bros. from entering agreements with third persons for the production or distribution of phonograph records embodying the perform-

ances of Kweskin, from advertising or using the name and likeness of Kweskin with regard to phonograph records, and from interfering with the exclusive recording agreement that Vanguard claims exists between it and Kweskin;

c) defendant Warner Bros., its licensees and agents from manufacturing, selling or distributing any phonograph records embodying the performances of Kweskin, and ordering Warner Bros. to destroy any master tape recordings or other material embodying the performances of Kweskin.

Plaintiff's motion for a preliminary injunction is denied.

Kweskin is the leader of a musical group called "Jim Kweskin and The Jug Band," or "Jim Kweskin Jug Band" (hereinafter referred to as the Jug Band). The Jug Band entered into a recording contract with Vanguard dated April 1, 1963 (the Jug Band contract), that provided for an initial term until April 30, 1964 and provided for two options, each permitting Vanguard to extend the contract for one year by giving the Jug Band written notice at least 30 days prior to the expiration of the existing term of the contract. Thereafter, Kweskin entered into the recording contract with Vanguard dated April 17, 1963 (the solo contract), that also provided for an initial term until April 30, 1964 and for two options on the same terms as those in the Jug Band contract. In other respects, the provisions in the Jug Band contract are the same as those in the solo contract. Both contracts provide in part as follows:

"1—We [Vanguard] hereby agree to employ your personal services as a recording artist for the purpose of making phonograph records and you [the Jug Band and Kweskin respectively] hereby agree to record solely and exclusively for us according to the terms and provisions of this agreement.

"2—* * * A minimum of sixteen 45 or 78 rpm record sides shall be recorded during the initial term of this agreement, and additional recordings shall be made at our election. The musical compositions to be recorded shall be mutually agreed upon between you and us, and each recording shall be subject to our approval as satisfactory for manufacture and sale. We shall have the right to call upon you to repeat any work until a satisfactory master recording has been made.

"6—During the term of this agreement you will not perform for the purpose of making phonograph records for any person other than us, * * * and you acknowledge that your services are unique and extraordinary."

"11—If, by reason of illness, injury, accident or refusal to work, you fail to perform for us in accordance with the provisions of paragraph 2 of this agreement, * * * without limiting our rights in any such event, we shall have the option without liability to suspend operation of paragraph 2 of this agreement for the duration of any such contingency by giving you written notice thereof; and, at our election, a period of time equal to the duration of such suspension shall be added to the end of the then current period of the term hereof, and then such period and the term of this agreement shall be accordingly extended."

On February 23, 1967, Warner Bros. entered into a recording contract with the Jug Band (the Warner Bros. contract), and since that date, an LP album with recordings of the Jug Band has been made and 11,000 to 12,000 of the albums have been distributed at a cost of some $21,000. According to the affidavit of its Vice-President, Warner Bros. is a financially solvent corporation with cash on hand in excess of $10 million and a gross annual business of some $24 million.

Vanguard contends that, for the reasons hereinafter stated, the solo contract, which had an initial term of one year running until April 30, 1964, is still in effect, and that it is entitled to a preliminary injunction. (Vanguard also claims that the Jug Band contract is still in effect, but in its motion it is relying only on the solo contract.) At oral

argument, all parties agreed that determination of the motion for a preliminary injunction did not require an evidentiary hearing.

It is Vanguard's position that Kweskin refused to perform from March 3, 1964 to April 21, 1965 (a period of 1 year, 1 month and 18 days), justifying Vanguard in suspending the solo contract under paragraph 11 and in adding this period to the then current term of the contract, thereby extending it until April 21, 1966. Since the suspension continued after the expiration of the original term of the contract, viz., April 30, 1964, Vanguard argues that for purposes of paragraph 11, the original term did not end on April 30, 1964, but ended when Vanguard lifted the suspension on April 21, 1965, and that it was entitled to add the period of suspension to the new date, April 21, 1965. Vanguard then renewed the solo contract until April 21, 1967 under the first option and until April 21, 1968 under the second option. On January 12, 1967 Vanguard again suspended the solo contract under paragraph 11 and claims that the contract is now in its second year with more than a year remaining before it expires. Vanguard contends that Kweskin ratified its interpretation of the contract by performing under the solo contract on July 11, 19 and 20, 1966 and on August 18 and 22, 1966.

Kweskin, on the other hand, denies that his performances make Vanguard's interpretation of the contract binding on him, and contends that even if the solo contract was still in effect in July and August 1966, two letters from Vanguard to him dated July 27, 1966 and August 22, 1966 released him from any obligations he had thereunder. Vanguard denies that these letters constituted a release, claiming that they were an offer that Vanguard withdrew by letter to Kweskin and the Jug Band dated November 29, 1966.

▇ Vanguard's motion for a preliminary injunction must be denied since the affidavits, exhibits and pleadings before the court evidence issues of fact which can only be resolved at trial. See

Willheim v. Investors Diversified Services, Inc., 303 F.2d 276 (2d Cir. 1962); G. P. Putnam's Sons v. Lancer Books, Inc., 239 F.Supp. 782, 787 (S.D.N.Y. 1965); Paramount Pictures Corp. v. Holden, 166 F.Supp. 684 (S.D.Calif. 1958). These issues of fact include, but are not limited to, the following:

1) If, as appears from the papers before the court, the Warner Bros. contract is with the Jug Band and not with Kweskin individually, does the solo contract give Vanguard the right to enjoin performances by the Jug Band? The solo contract appears to relate only to performances by Kweskin as an individual and not to performances by him as a member of the Jug Band.

2) Did Kweskin refuse to perform under the solo contract?

3) If Kweskin did refuse to perform, which he denies, did such refusal end by June 12, 1964 as Kweskin contends or did it continue until April 21, 1965 as Vanguard contends?

4) Did Kweskin ratify Vanguard's interpretation of the solo contract by performing for Vanguard on July 11, 19 and 20, 1966 and on August 18 and 22, 1966?

5) If the solo contract was in effect in July and August 1966, did Vanguard, by reason of the letters from Vanguard to Kweskin dated July 27, 1966 and August 22, 1966, release Kweskin from his obligations?

6) Assuming that Kweskin is still bound by the solo contract, are his services so unique and extraordinary as to warrant the issuance of an injunction? See Madison Square Garden Corp. v. Carnera, 52 F.2d 47 (2d Cir. 1931); Machen v. Johanssen, 174 F.Supp. 522, 529 n. 8 (S.D.N.Y.1959); Harry Rogers Theatrical Enterprises, Inc. v. Comstock, 225 App.Div. 34, 232 N.Y.S. 1 (1st Dept. 1928).

▇ Vanguard has not shown that it is reasonably certain to prevail at trial or that it will suffer irreparable injury outweighing the harm that a preliminary injunction is likely to cause to Kweskin and other members of the Jug Band.

See, e. g., Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840 (2d Cir. 1967); Rosemont Enterprises, Inc. v. Random House, Inc., 366 F.2d 303 (2d Cir. 1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967).

There is serious doubt that Vanguard is correct in interpreting paragraph 11 of the solo contract so as to give it the right to extend the contract until April 21, 1966. Under paragraph 11 Vanguard could add a period of time equal to the duration of any suspension to the end of the then current term of the contract. Since the initial term was to expire on April 30, 1964, the period of suspension could only extend the contract until sometime in June 1965 rather than until April 21, 1966. Vanguard so interpreted paragraph 11 in the Jug Band contract (letter of July 8, 1966 from Vanguard to Kweskin and the Jug Band), and this appears more reasonable than the construction here urged. If the suspension extended the solo contract only until June 1965, then on April 21, 1965 the contract would have approximately two months more to run and Vanguard would receive the same period of performance as it would have received had there been no suspension. On the other hand, if the suspension extended the contract until April 21, 1966, then Vanguard would receive a period of performance that was 10 months longer than the period of performance it would have otherwise received.

If Vanguard was entitled to extend the solo contract only until June 1965, then Vanguard did not validly exercise the first and second options to renew and the contract would not presently be in effect.

According to Vanguard's interpretation of the solo contract, it is entitled to turn a one-year contract with two one-year renewal options into a contract that will run for more than five years. If Vanguard's interpretation of the contract is correct, it would appear that the contract was harsh and unreasonable and on equitable grounds the court would decline to issue a preliminary injunction. See Machen v. Johanssen, supra, at 530–31; see also Welcome Wagon, Inc. v. Morris, 224 F.2d 693 (4th Cir. 1955).

Vanguard has not shown that it is reasonably certain to prove at trial that Kweskin ratified its interpretation of the contract (see Hopwood Plays, Inc. v. Kemper, 263 N.Y. 380, 189 N.E. 461 (1934); Mohawk National Bank v. Chalifaux, 33 Misc.2d 987, 227 N.Y.S.2d 526 (Schenectady Co. Ct. 1962)) or that the letters of July and August 1966 did not release Kweskin.

Even if Vanguard had made a stronger showing of probable success at trial, Vanguard's motion would be denied in the exercise of the court's discretion because Vanguard has not shown that if a preliminary injunction is denied it will suffer irreparable injury outweighing the harm that a preliminary injunction is likely to cause to the defendants and other members of the Jug Band. See, e. g., Symington Wayne Corp. v. Dresser Industries, Inc., supra; Paramount Pictures Corp. v. Holden, supra. It appears that Warner Bros. will be able to respond in full to any damages Vanguard proves at trial it is entitled to recover. On the other hand, a preliminary injunction is likely to restrain performances by the other members of the Jug Band as well as Kweskin since they and Kweskin perform as a group. Moreover, it appears that Warner Bros. has already begun the distribution of its album with the recordings of the Jug Band, has entered into contracts for the distribution of the album, and has incurred substantial advertising expenses.

The foregoing constitutes the court's findings of fact and conclusions of law. Rule 52(a), F.R.Civ.P.

Vanguard's motion for a preliminary injunction is denied.

It is so ordered.