**Roberta FLACK and Roberta Flack Enterprises, Inc., Plaintiffs,**

**v.**

**UNITED ARTISTS CORPORATION et al., Defendants.**

**No. 74 Civ. 2482(MP).**

United States District Court, S. D. New York.

July 10, 1974.

Mayer, Nussbaum & Katz, New York City by Theodore Nussbaum, New York City, and Michael R. Ashburne, Atlanta, Ga., for plaintiffs.

Pryor Cashman & Sherman, New York City by Stephen F. Huff, New York City, for defendants.

### MEMORANDUM

POLLACK, District Judge.

Plaintiff, a prominent popular songstress, has applied for a preliminary injunction, pursuant to Rule 65, Fed.R. Civ.P., to restrain defendants from selling, showing, or distributing the motion

picture "Huckleberry Finn" and the soundtrack album from that movie. The litigation is in essence centered around whether the plaintiff had the right of approval of the use and approved of the use in the picture of a song which she had recorded for defendants.

The facts bearing on this application are as follows.

In May of 1973 the plaintiff was approached by defendant Apjac International, Inc. (hereinafter "Apjac"), the producer of "Huckleberry Finn" to sing a particular song entitled "Freedom" to be incorporated in the soundtrack of the movie. Plaintiff expressed immediate interest in the project, and without any written agreement, she agreed to record the song. On June 11, 1973, a representative of Apjac wrote to plaintiff's counsel confirming the alleged "oral understanding" between the parties. On July 9, Apjac's counsel forwarded to plaintiff's lawyer two proposed forms of written agreements, one between Apjac and the plaintiff and the other, between Apjac and Atlantic Records.[1] On July 18, Apjac's counsel also sent to plaintiff's lawyer a "short form" of written agreement between the plaintiff and defendant United Artists. In none of the forwarding letters or proposed written agreements was there any indication of any right of approval retained by plaintiff over the release of the anticipated recording.

On November 27, 1973, Apjac's lawyer wrote plaintiff's counsel for approval of the credit to plaintiff to be displayed in the movie. This letter requested the completion and return of the written forms of agreement sent earlier. On December 3, the use of plaintiff's name in the film credits was expressly approved as suggested and several suggestions pertaining to compensation arrangements and other details were proposed. These additions were subsequently embodied in proposed forms of written agreement sent to plaintiff on April 10, 1974. Meanwhile, during December

of 1973, the song in question was recorded by plaintiff in California.

Plaintiff claims that she and her attorney "indicated" to Apjac and Apjac's music director that the recording was to be a "trial" recording only, and that it was not to be released under any circumstances until (i), she had personally approved the recording, (ii), the forms of contracts were fully executed, and (iii), the agreed compensation to plaintiff (totalling some $5,000) was paid. Plaintiff further contends that neither she nor the Apjac music director was "satisfied" with the December recording session, and she "understood" that a second session would be scheduled.

Defendants deny that there was any understanding as to a right of approval of the recording by the plaintiff or to a second recording date.

On February 15, a tape of the recording was sent to the plaintiff; however, she was in Europe and did not listen to the tape until March 5. She allegedly deemed the tape "totally unacceptable" and so advised her attorney, who in turn communicated with Apjac's music director to arrange another recording session. Plaintiff contends that Apjac "understood" the problem and agreed to arrange another recording session at a mutually convenient time, but no subsequent session was ever arranged.

On April 4, 1974, the movie and the soundtrack album were released to the public; plaintiff claims that neither she nor her lawyers learned of the release until shortly thereafter.

Plaintiff insists that no contract was ever arrived at between the parties while defendants claim that a full and complete agreement was reached. At all events, on May 31, 1974, the plaintiff brought this diversity suit for injunctive and other relief grounded on the provisions of the N.Y. Civil Rights Law §§ 50 and 51, McKinney's Consol.Laws, c. 6, and incident thereto this motion was made for a preliminary injunction.

---

1. Plaintiff was contractually committed to Atlantic Records through 1978.

The relevant portion of the N.Y. Civil Rights Law § 51 provides:

Any person whose name, portrait or picture is used within this State for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the Supreme Court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; . . .

Among the powers entrusted to a District Judge, few require as much caution and deliberation as the power to issue a preliminary injunction. Heldman v. United States Lawn Tennis Association, 354 F.Supp. 1241 (S.D.N.Y.1973). This is especially true in cases, as here, involving proposed restraints on forms of public expression, such as movies, because of the serious First Amendment questions lurking therein. *Cf.* 414 Theater Corp. v. Murphy, 499 F.2d 1155 (2d Cir. 1974); University of Notre Dame v. Twentieth Century Fox Film Corp., 22 A.D.2d 452, 256 N.Y.S.2d 301 (1st Dept), affd. 15 N.Y.2d 940, 259 N.Y.S.2d 832, 207 N.E.2d 508 (1965).

A party seeking such relief "is obliged to establish a clear and compelling legal right thereto based upon undisputed facts." Rosemont Enterprises, Inc. v. Random House, Inc., 366 F.2d 303, 311 (2d Cir. 1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). The well-settled rule in this Circuit is that on such an application the moving party has the burden of clearly demonstrating a combination of either (1) clear likelihood of success on the merits and the possibility of irreparable damage, or (2) the existence of sufficiently serious questions going to the merits and a balance of the equities tipping decidedly in favor of preliminary relief. Columbia Pictures Industries, Inc. v. American Broadcasting Companies, Inc., 501 F.2d 894 (2d Cir. 1974); American Brands, Inc. v. Playgirl, Inc., 498 F.2d 947 (2d Cir. 1974); Charlie's Girls, Inc. v. Revlon, Inc., 483 F.2d 953

(2d Cir. 1973); Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247 (2d Cir. 1973). Pride v. Community School Board, 482 F.2d 257 (2d Cir. 1973). This application fails to satisfy the foregoing prerequisites for imposing a provisional remedy in advance of trial and therefore this motion must be denied.

It is sufficient for present purposes to note, without deciding the merits, that there is a sharp dispute concerning the claimed "understanding" as to a right of approval before release of the recording. *Cf.* Dopp v. Franklin National Bank, 461 F.2d 873 (2d Cir. 1972). In regard to the contention that defendants are unlawfully using plaintiff's name with the recording, the N.Y. Civil Rights Law § 51, on which the moving party relies, expressly authorizes the use of the name of an artist in connection with a work which (s)he has sold or disposed of with such name:

"[N]othing contained in this act shall be so construed as to prevent any person . . . from using the name, portrait, or picture of any author, composer, or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait or picture used in connection therewith."

*See, also,* Yameta Co. v. Capital Records, Inc., 279 F.Supp. 582 (S.D.N.Y.1968).

Whether or not plaintiff "sold or disposed" of her name with the recording is a question "making [the issue] fair ground for litigation." Columbia Pictures Industries, Inc. v. American Broadcasting Companies, Inc., 501 F.2d 894, at 897 (2d Cir. 1974). *See* generally Sweenek v. Pathe News, Inc., 16 F. Supp. 746 (E.D.N.Y.1936); Roselli v. Warner Brothers, Inc., Misc. (Sup.Ct. N.Y.Co., April 15, 1974).

Moreover, plaintiff has failed to show any substantial degree of irreparable damage by the continued exhibition of the movie with the recorded song pending resolution of this lawsuit. As of now, the only indication that the recording is in fact "substandard" is plain-

tiff's own artistic evaluation. Her complaint, in essence, is that the addition of what she conceives to be inappropriately lush orchestral background to her folk-style vocal, has ruined her performance and harmed her reputation. She claims, to paraphrase one of plaintiff's own familiar song titles, that the defendants are "killing [her] softly with [her] song." Musical taste is a subjective, fleeting and often elusive concept. For that very reason, it cannot be said with the reasonable certainty required for the present inquiry that plaintiff's reputation will be irreparably harmed by the inclusion in the sound track of the movie of one brief song. The plaintiff's lengthy period of recording success—evidenced in part by the Grammy award of "Best Song of the Year" to two of plaintiff's compositions in successive years—tends on the present record to give a sturdier cast to the resiliency and quality of plaintiff's reputation than she acknowledges by concern over a single recording in an incidental portion of one movie. Furthermore, to the extent that plaintiff's prayer for relief is grounded upon alleged tortious interference with her contractual relationship with Atlantic Records, money damages would fully compensate this if liability is established, making preliminary injunctive relief inappropriate. *See* Vanguard Recording Society Inc. v. Kweskin, 276 F.Supp. 563 (S.D.N.Y.1967).

The inconclusive evidence of "harm" to plaintiff fails to tip the balance of equities decidedly in her favor. If anything, the enormous cost and disruption that would be incurred by defendants in recalling all prints of the film, erasing the song and title credits, and recalling and erasing the soundtrack album, suggest that the equities on the question of temporary relief tip in favor of the defendants. Furthermore, the granting of preliminary relief herein would run afoul of the admonition that "it is improper to issue a preliminary injunction where such a grant would effectively provide all the relief sought in the complaint." Heldman v. United States Lawn Tennis Association, 354 F.Supp.

1241, 1249 (S.D.N.Y.1973). *See also* Knapp v. Walden, 367 F.Supp. 385, 388 (S.D.N.Y.1973).

Accordingly, the motion for a preliminary injunction must be and is denied. The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a), Fed.R.Civ.P.

So ordered.