# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 27, 2012 Session

## CURB RECORDS, INC. v. SAMUEL T. MCGRAW

**Appeal from the Chancery Court for Davidson County**
**No. 110631IV     Russell T. Perkins, Chancellor**

---

**No. M2011-02762-COA-R3-CV - Filed September 25, 2012**

---

A recording company brought this breach of contract action against a recording artist. This appeal involves only the trial court's decision to deny the recording company temporary and permanent injunctive relief. We find no error in the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P. J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Jay S. Bowen, John L. Unger, Will Parsons and Amy J. Everhart, Nashville, Tennessee, for the appellant, Curb Records, Inc.

William T. Ramsey, Robert A. Peal and Russell A. Jones, Jr., Nashville, Tennessee, for the appellee, Samuel T. McGraw.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

We begin this opinion by addressing the posture of the case in this appeal. This is a contractual dispute between Curb Records, Inc. ("Curb") and Tim McGraw. As will be discussed more fully below, the parties agreed to a bifurcated proceeding in which the trial court would first make a "final determination whether or not Curb is entitled to prevent Mr. McGraw, by injunction or otherwise, from recording for entities other than Curb" and then later have a trial on the merits. The first phase of the proceedings consisted of a hearing at which the attorneys made arguments to the court and submitted depositions, affidavits, and other documents. By agreement of the parties, no testimony was taken. In this appeal, we are asked to review the chancellor's decision on this initial phase of the proceedings. It is

important to note that, since we are considering the propriety of the trial court's determination regarding injunctive relief, nothing in this opinion should be construed as making factual findings binding upon the court at the second phase of the proceedings.

In March 1997, Tim McGraw and Curb entered into a recording agreement under which McGraw would render his services as a recording artist exclusively for Curb during the term of the agreement. The agreement provides for an initial period during which McGraw was required to deliver three albums. After the initial period, McGraw granted Curb six options, "each to extend the term of this agreement for one option period commencing immediately upon the expiration of the then current period . . . and continuing until nine (9) months after your Delivery to Curb of all Masters required during such option period." During each option period, McGraw was required to record and deliver to Curb "a number of Masters sufficient for one (1) album of then customary playing time." The agreement contains the following key provisions concerning the duration of each option period:

> The individual producer of the Masters, and the selections to be recorded, are subject to the mutual approval of you and Curb. . . . [Y]ou hereby agree to record and Deliver (and Curb hereby acknowledges that you shall be permitted to Deliver) to Curb all Masters in fulfillment of each album of your recording commitment hereunder (excluding Greatest Hits, Live albums etc.) subsequent to the "First LP" (as defined below) no earlier than twelve (12) months nor later than eighteen (18) months following Delivery to Curb of the immediately preceding album in fulfillment of your recording commitment hereunder (excluding Greatest Hits, Live albums, etc.). At such time, if any, that Curb elects to release any Greatest Hits album embodying Masters under this agreement and/or the Prior McGraw Agreement, Curb may in Curb's sole discretion, further extend the time frame for Delivery set forth in the previous sentences of the next such album of your recording commitment by up to a maximum of six (6) additional months in any single instance.

The agreement further provides that Curb is the "perpetual owner of all Masters (and all other recordings . . . embodying your performances made during the term hereof)."

McGraw recorded and delivered three albums during the initial period and one album during each of the first four option periods. On October 22, 2010, McGraw gave[1] to Curb a group of masters for an album entitled *Emotional Traffic*. The current dispute arose when Curb refused to accept these masters in satisfaction of McGraw's contractual obligations for

---

[1]Curb denies that this constituted "Delivery" as defined in the agreement.

the fifth option period.

On May 13, 2011, Curb filed a complaint for a declaratory judgment against McGraw in which Curb alleged that McGraw was in breach of the agreement because he refused to record and deliver the fifth option period album in accordance with the terms of the agreement. Among Curb's assertions is that McGraw recorded the masters for *Emotional Traffic* prior to the fifth option period. The complaint includes a prayer for the following relief:

> 1. That the Court declare that Tim McGraw is in breach of the Recording Agreement because, among other things, he has failed and refused to record and Deliver the fifth Option Period Album during the six (6) month period ending April 20, 2011 pursuant to the terms of the Recording Agreement; and
>
> 2. That the Court declare that the Emotional Traffic Masters do not and cannot constitute the fifth Option Period Album; and
>
> 3. That Curb Records may exercise all of the rights provided to it in the Recording Agreement upon Tim McGraw's failure or refusal to Deliver Masters; and
>
> 4. That the Court declare that as he has repudiated the June 21, 2001 Settlement,[2] Tim McGraw is obligated to record and Deliver a sixth Option Period Album to Curb Records under the Recording Agreement; and
>
> 5. For compensatory damages to Curb Records; and
>
> 6. For consequential damages to Curb Records; and
>
> 7. That the Court enjoin Tim McGraw from providing personal services as a recording artist, or agreeing to do so, other than to Curb Records for so long as he, among other things, fails and refuses to record and Deliver to Curb Records the fifth Option Period Album and the sixth Option Period Album under the Recording Agreement; . . . .

McGraw counterclaimed for breach of contract, breach of implied covenant of good faith and fair dealing, and intentional interference with business relationships.

---

[2]In this settlement agreement, Curb agreed to reduce its options from six to five.

On September 29, 2011, the trial court entered an agreed scheduling order providing for "bifurcated proceeding that will first make a final determination whether or not Curb is entitled to prevent Mr. McGraw, by injunction or otherwise, from recording for entities other than Curb, followed by the progression of a trial on the merits." A "Rule 65.01 hearing" was scheduled for November 29 and 30, 2011. The trial on the merits was set for July 2012. By agreement of the parties, the Rule 65.01 phase of the proceedings would be based solely on documents submitted to the court and the arguments of counsel. In November 2011, Curb filed a motion for a preliminary injunction to prevent McGraw from working as a recording artist for any other person or entity during the pendency of the case.

After the 65.01 hearing in November 2011, the court denied Curb's request for injunctive relief and, on December 8, 2011, entered a memorandum and order. In denying Curb's request for injunctive relief, the trial court expressly reserved for adjudication at trial "the question of whether *Emotional Traffic* constitutes the Fifth Option Album and whether Mr. McGraw deprived Curb Records of its pre-approval rights, in breach of the parties' contract." The Court also ruled that, except for *Emotional Traffic* recordings, recordings made by McGraw as of November 30, 2011 belonged to McGraw "at least to the extent that he may control the release and distribution of those records." Only recordings by McGraw made on or after December 1, 2011 belonged wholly to McGraw or any company with which he might choose to contract. The court directed that the memorandum and order be entered as a final judgment under Tenn. R. Civ. P. 54.02, and Curb appealed.

On appeal, Curb argues that the trial court erred in concluding that Curb failed to demonstrate irreparable harm from McGraw's breach; and that the trial court erred in adjudicating the ownership of the recordings at issue.

STANDARD OF REVIEW

A trial court's decision to grant or deny a request for a temporary injunction is reviewed under an abuse of discretion standard. *Gentry v. McCain*, 329 S.W.3d 786, 793 (Tenn. Ct. App. 2010). Similarly, the decision to grant or deny permanent injunctive relief rests within the discretion of the trial court and is reviewed for an abuse of that discretion. *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 466 (Tenn. Ct. App. 2009); *Medtronic, Inc. v. NuVasive, Inc.*, W2002-01642-COA-R3-CV, 2003 WL 21998480, at *10 (Tenn. Ct. App. Aug. 20, 2003).[3] Under the abuse of discretion standard, a reviewing court

_____

[3]Curb argues that, "because the trial court's Memorandum and Order constitutes a 'final judgment' on Curb Records' claim for injunctive relief," this court should review the trial court's decision as if it were an appeal following a bench trial. Even if there had been a bench trial, the trial court's decision with respect
(continued...)

-4-

cannot substitute its judgment for the trial court's judgment. *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011). Rather, a reviewing court will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.,* 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010).

## ANALYSIS

Before addressing Curb's arguments, we will seek to clarify the appropriate analytical framework. The trial court addressed the issues of temporary and permanent injunctive relief together. Under Tenn. R. Civ. P. 65.04(2), the following standards apply with respect to temporary injunctions:

> A temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.

Pursuant to caselaw, there are four factors to be considered by a trial court in deciding whether to issue a temporary injunction: the threat of irreparable harm, the balance between the harm to be prevented and the injury to be inflicted if the injunction issues, the probability that the applicant will succeed on the merits, and the public interest. *Moody v. Hutchison*, 247 S.W.3d 187, 199-200 (Tenn. Ct. App. 2007). With respect to permanent injunctive relief, the analysis differs somewhat as, in the typical situation, the court has ruled in favor of the applicant on the merits and must determine whether permanent injunctive relief is an appropriate remedy. *See Vintage Health*, 309 S.W.3d at 467. Because, in the present case, the parties agreed to submit the issue of permanent injunctive relief for resolution prior to a trial on the merits, the trial court stated that it had "essentially merged the consideration of Plaintiff's request for a temporary injunction with Plaintiff's request for a permanent injunction."

---

[3](...continued)
to the issuance of a permanent injunction would be reviewed under the abuse of discretion standard. *See Vintage Health* , 309 S.W.3d at 466.

# I.

Curb's first argument is that the trial court "incorrectly applied the law to the facts in concluding that Curb Records has suffered no irreparable harm." Thus, Curb disagrees with the trial court's conclusion of law concerning irreparable harm. We note that, even if we examine the propriety of this particular decision de novo, the trial court's ultimate determination not to grant injunctive relief must be reviewed for an abuse of discretion.

In its conclusions of law, the trial court stated that "Curb Records has arguably shown some likelihood of success on its breach of contract claim with respect to the timing issue and, to a lesser extent, on the pre-approval issue." The court went on to make the following findings regarding irreparable harm and the appropriateness of injunctive relief:

> The Court concludes that Curb Records has not made a showing of irreparable harm sufficient to warrant the Court's grant of a temporary injunction preventing Mr. McGraw from continuing his recording career. Additionally, the Court concludes that Curb Records is, in part seeking specific performance against Mr. McGraw and that this relief is disfavored under Tennessee law. Curb Records' contention that Mr. McGraw can, in essence, cure the alleged breach by recording additional songs or an additional album while affording Curb Records pre-approval rights amounts to request for specific performance in a personal services contract where the parties have differences that would make this process exceedingly difficult.

> Curb Records is seeking permanent injunctive relief prohibiting Mr. McGraw from continuing his recording career as a musician for any other recording company. This requested relief appears heavy-handed and legally impermissible under the circumstances, given: 1) the limited nature and extent of the alleged breach of contract upon which Curb Records has shown some likelihood of success; 2) the fact that Mr. McGraw's alleged breach occurred near the end (rather than at the beginning) of a multiple-year contractual relationship with Curb Records; 3) Mr. McGraw provides unique services as a recording artist that the public has an interest in being made available while this dispute proceeds through the courts, subject to any monetary judgment this Court may award after the trial on the merits; 4) Mr. McGraw's conduct in recording *Emotional Traffic* and delivering it to Curb Records afforded Curb Records the benefit of Mr. McGraw's unique and extraordinary talent; and 5) an injunction would likely have an adverse and disproportionate effect on the body of musical recording work Mr. McGraw would be permitted to produce during this important period in Mr. McGraw's musical career.

-6-

The trial court ultimately reached the following conclusion: "Under all of the unique circumstances described in this Memorandum and Order, the Court concludes that Curb Records will not suffer irreparable harm if Mr. McGraw records for himself or for another record company. Curb Records has an adequate remedy at law."

On appeal, Curb asserts that the factual findings made by the trial court necessitate the legal conclusion that Curb suffered irreparable harm. Curb argues that "breach of an exclusive personal services contract by a unique and exceptional performer constitutes irreparable harm." It is undisputed that McGraw is a unique and exceptional artist. For purposes of ruling on injunctive relief, the trial court essentially accepted Curb's allegations that McGraw breached the contract.[4] These two facts do not, however, necessitate a conclusion of irreparable harm.

A court is to use its equitable power to grant injunctive relief sparingly. *Vintage Health*, 309 S.W.3d at 467. The following principles are instructive:

> The general rule in respect of contracts for personal services is that for breach thereof a party must avail himself of the remedy afforded at law. It is a familiar and well established doctrine that courts of equity will not exercise jurisdiction to grant a decree for specific performance of a contract for personal services except perhaps in very exceptional cases or under very exceptional circumstances. *Neither, as a general rule, will equity indirectly enforce a contract for personal services by an injunction restraining the employee from leaving the services of the employer, except to prevent breach of contract by one who possesses some special, unique, or extraordinary qualifications, where it would be difficult, if not impossible, to replace his services, and damages obviously would be inadequate to remedy the loss.*

*Bunns v. Walkem Dev. Co., Inc.*, 385 S.W.2d 917, 923 (Tenn. Ct. App. 1964) (quoting 49 AM. JUR. 2D *Specific Performance* § 134) (emphasis added). While Tennessee cases have recognized a special exception for contracts involving unique and extraordinary services, unique and extraordinary services do not make injunctive relief appropriate in all cases. *See Cagle v. Hybner*, No. M2006-02073-COA-R3-CV, 2008 WL 2649643, at *20 (Tenn. Ct. App. July 3, 2008).

In *Cagle v. Hybner*, the court considered the propriety of specific performance or an

---

[4]While the court concluded that Curb Records had "arguably shown some likelihood of success on its breach of contract claim," the court made clear that it "will not make a final decision on Curb Records' pending breach of contract claims until the conclusion of the trial on the merits."

injunction preventing a songwriter from composing any songs for others until the songwriter fulfilled his obligations to a publisher under a songwriter agreement. *Id.* at *18-21. After acknowledging the general rule against specific performance to enforce a personal service contract and the limited exception regarding services for unique and extraordinary skills, the court stated that "such extraordinary relief is not appropriate unless *the court* can determine that the contract is 'clear, definite, complete and free from any suspicion of fraud and unfairness.'" *Id.* at *18-19 (quoting *Johnson v. Browder*, 207 S.W.2d 1, 3 (Tenn. 1947)). Because the only basis to determine the sufficiency of the songwriter's future performance was the subjective opinion of the publisher, the court concluded that the contract did not provide the required clear and definite criteria. *Id.* at *19. The court went on to conclude that specific performance also was not appropriate because of the "undesirability of compelling the continuance of personal association after disputes have arisen and confidence and loyalty are gone." *Id.* at *20 (quoting RESTATEMENT (FIRST) OF CONTRACTS § 379 cmt. d (1932)).

While much of the court's analysis in *Cagle* focused on specific performance, the court also considered injunctive relief. *Id.* In concluding that injunctive relief was not appropriate, the court stated:

> A promise to render personal service exclusively for another will not be enforced by injunction against serving another person if its probable result will be to compel a performance involving personal relations the enforced continuance of which is undesirable. *Restatement (Second) of Contracts* § 367 (1981). In the present matter, if Cagle is enjoined from writing songs for anyone other than Hybner until Cagle has composed and delivered 76.52 songs Hybner determines, in his sole discretion, to be of commercially marketable quality, then Cagle may forever be enjoined from songwriting or may be forced into involuntary servitude to Hybner for years. Such a circumstance places Hybner in a position of overwhelming power, which we find to be unfair, and thus, inequitable.

*Id.* Thus, although injunctive relief may be appropriate in cases involving contracts for unique and extraordinary services, such relief may not be appropriate where the contract does not provide sufficiently definite terms and/or where an injunction would amount to an involuntary servitude. *See also News Mart, Inc. v. State ex rel. Webster*, 561 S.W.2d 752, 753 (Tenn. 1978) (injunction must describe enjoined activities with specificity); *Cooper Mgmt., LLC v. Performa Entm't, Inc.*, W2001-01134-COA-R3-CV, 2002 WL 1905318, at *3 (Tenn. Ct. App. Aug. 15, 2002) (length of injunction to be based on objective, not subjective, standard).

Curb cites a multitude of cases from other jurisdictions in support of its position that the trial court should have found irreparable harm. *See, e.g., Zomba Recording LLC v. Williams*, 15 Misc. 3d 1118(A) (N.Y. Sup. Ct. 2007); *MCA Records, Inc. v. Newton-John*, 153 Cal. Rptr. 153 (Cal. Ct. App. 1979); *Harry Rogers Theatrical Enters., Inc. v. Comstock*, 232 N.Y.S. 1 (N.Y. App. Div. 1928); *Shubert Theatrical Co. v. Rath*, 271 F. 827 (2d Cir. 1921); *Philadelphia Ball Club v. Lajoie*, 202 Pa. 210 (1902); *Daly v. Smith*, 49 How. Pr. 150 (N.Y. Super. Ct. 1874); *Lumley v. Wagner*, (1852) 77 Eng. Rep. 687 (Ch); De GM & G 604. We agree with McGraw, however, that these cases are all distinguishable from the present case because they involved contracts for a specific length of time. In this case, the contract lacks a specific durational limit; rather, as in *Cagle*, the contract would continue until Curb determined that McGraw had met his contractual obligations. In *Ichiban Records, Inc. v. Rap-A-Lot Records, Inc.*, 933 S.W.2d 546, 552 (Tex. App. 1996), the court declined to enforce by injunction a contract without a specific time limit.

Thus, even though McGraw is undisputedly an entertainer offering unique and extraordinary services, the trial court did not err in finding that there was no irreparable harm or in exercising its discretion to conclude that injunctive relief was not appropriate. As in *Cagle*, this case involves a contract whose duration depends upon the exercise of discretion by the party seeking the injunction. The requested injunction would essentially place McGraw in a position of choosing between the end of his recording career or the indefinite continuation of a relationship with Curb that has become contentious.

II.

Curb's second main argument is that the trial court erred in concluding that Curb did not own certain McGraw recordings.

The relevant portion of the trial court's order provides as follows:
The Court concludes that the *Emotional Traffic* collection of recordings belong to Curb Records under the parties' contract. The Court concludes that Curb Records did not make the requisite showing, in the context of its request for a temporary or permanent injunction, for this Court to declare that Mr. McGraw's other recordings, as of November 30, 2011, belong to Curb Records. Stated another way, recordings made by Mr. McGraw as of November 30, 2011, except for the *Emotional Traffic* recordings, belong to Mr. McGraw at least to the extent that he may control the release and distribution of those records. Only recordings made by Mr. McGraw on December 1, 2011 and thereafter wholly belong to Mr. McGraw and/or any other company that he may elect to contract with for the release and distribution of those recordings.

(Footnote omitted).  Thus, the trial court provides that, from the time that McGraw gave the *Emotional Traffic* recordings to Curb in October 2010 through the time of the non-evidentiary hearing on November 30, 2011, McGraw's recordings other than *Emotional Traffic* should be considered the property of McGraw, at least for the purposes of releasing and distributing records.  In a footnote, the court stated:  "To the extent that Curb Records' current Complaint seeks damages for these unspecified recordings, Curb Records may seek to recover compensatory damages at the trial on the merits."  All recordings made after December 1, 2011 belong to McGraw.

Curb objects to the trial court's determination regarding ownership of recordings prior to a trial on the merits.  Curb argues that a proper analysis would have addressed questions of when the fifth option period commenced, whether McGraw recorded masters in compliance with the recording agreement, whether he delivered his final option period album to Curb as required in the agreement, and whether nine months have expired since delivery.  These issues, however, must be resolved at the trial on the merits.  As discussed above, the parties agreed to submit the question of injunctive relief to the trial court in a non-evidentiary hearing.  Without a preliminary determination by the trial court of a dividing line concerning the ownership of masters, the trial court would essentially have given Curb the ability to keep McGraw from moving forward with his recording career, a result that the court found inappropriate in denying Curb's request for injunctive relief.

We find no error in the trial court's preliminary determination regarding the ownership of masters.

CONCLUSION

We affirm the judgment of the trial court and assess the costs of this appeal against the appellant, Curb Records.  Execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE